Good morning, Your Honors. May it please the Court, I'm Angela Johnson-Mazaras, I'm here on behalf of the Petitioner, and I'd like to reserve three minutes of my time for rebuttal. Okay. Thank you, Your Honors. Your Honors, this case focuses on District Rule 1315, which is the method that the South increases from new sources of air pollution are decreased by real offsetting reductions, as required by the Act. While EPA dismisses this offsetting procedure as an accounting procedural mechanism, it's actually a clear direction from Congress with a clear intended outcome, and that is to ensure that new or modified sources of pollution that are added to a non-attaining area don't make the air worse. And EPA simply is not free to turn Congress's clear direction into a mere paper shuffling exercise by the State. So banking offsets, as proposed here, doesn't relieve the agency of the Act's obligation that each and every reduction is a real reduction of pollution that was in the air when the new facility was permitted or began operation. But this rule does exactly that, and it does it in at least three ways. First, is because it allows offsetting of new emissions with emissions reductions that were not in the air, either in reality or... This has been going on for quite some time, right? This rulemaking procedure? No, this practice of... The practice has been going on since 1990, at least, right? Well, offsetting has been happening since the new source review was adopted into the Clean Air Act. This rule is a brand new mechanism for validating and for keeping track of and for ensuring that the reductions that are banked are actually real reductions. So this is a new rule that's augmenting a process that's happened in other contexts, because there's really two ways that you can get emissions... I'm sorry, I asked you a straight question, and you gave me a very long answer that's meandered into all sorts of things. The practice has been going on for quite some time. Offsetting. Offsetting, right? Yes. What's new is it's now been codified into a rule. Yes. Okay. It was never challenged when it was going on as a matter of practice before the rule was? Well, there was a suit that we brought to this court to enforce... I'm sorry, it was challenged? Yes. And what happened to the challenge? We challenged the validity of the credits in the bank. And this court said that the time to make that challenge, the time to challenge the validity of those credits, was when the EPA made the decision to approve those credits. And so that's why we're back here now, because the EPA now is adopting a new rule that incorporates new account balances, that incorporates new mechanisms for validating offsets. And we were directed by this court that the time to make that challenge was now when the EPA made that decision. Well, you said something else. We didn't say wait until there's a rule. I thought you said... I mean, what happens if the rule is invalidated is what I'd like to know. Why doesn't this go back to the practice? Let's say the rule is invalidated. What effect does that have on... Wouldn't the practice continue, the pre-rule practice continue? The pre-rule practice, the rule would go... What would happen is we return to pre-rule 1315 status quo, which was essentially a time when the district was banking offsets and issuing emissions reductions credits to facilities. So, yes, we would go back to the pre-rule... So what have you gained by validating the rule? Where's the harm here? Where's the injury? If they get to do what they were going to do anyway, why are we here? Well, what we would hope was when the rule was invalidated by the court, there would also be additional instructions about what is or is not allowed by the Clean Air Act, because what we have alleged... Well, you've got to have injury in fact. You've got to have, you know, a relief that's meaningful and, you know, sort of a hope that, gee, if we sort of strike this down, they're going to sort of mend their ways and, you know, that's not concrete enough. Why isn't this sort of a... Why aren't you essentially asking us for an advisor opinion here? Since it has no... It will have no... If I understand your answer correctly, it will have no real effect on the ground in real life. Oh, it will have a real effect in reality. Okay, what is that? Well, the injury is being forced to breathe air that is not as clean as it would have been had the Clean Air Act requirements been followed. And if this... When this court rules that the Clean Air Act's requirements had not been followed, that will have repercussions. So there will be a period of time, presumably, when the district will still be issuing offsets, but those will be only valid offsets. They will stop issuing the offsets that are not valid under the Clean Air Act, which Congress... Because Congress's direction was clear. You can only offset new increases with real emissions reductions. So what we're challenging are those emissions reductions that the district is using to offset new emissions that are not actually real and don't actually meet the requirements of the Act. So far from... Okay. Judge Gould, if I could ask you a question. Yes. Is there any reason why you couldn't make your challenge in the context of a particular approval of a plant or some other business that was going to use some credits? Yes, Your Honor, there is. There are two reasons. First, when we attempted to come to this court under a citizen supervision to challenge offsets that were being issued, the court told us that the time to make that challenge is when the EPA indicated that those emissions reductions credits were valid, and that's this point now. Secondly, challenging this on a permit-by-permit basis is a violation of the direction in Romulan, which says that you can't come on an individual permit and challenge essentially credits that have already been banked. And as a practical matter, when the purpose of this offset thing is to ensure that any new emission is offset by a real reduction, and so in effect what that would mean is if we had to challenge that on an individual basis, we'd have to challenge not only each individual permit, but there are many facilities that don't get permits that go through any kind of commenting period. So there isn't an effective opportunity for petitioners whenever the district approves a new permit, if they approve a permit for a boiler, for us to go to the district and to challenge whether or not those offsets are valid. And the final reason is because this bank is an aggregate, so we don't even know which individual reduction they're claiming they're using to offset this new emission. Okay, thanks. That answers my question. Thank you, Your Honor. So... So do you contend that EPA should have listed all the individual offsets in this particular rule? No, we don't claim that they should have listed the individual offsets, but what we do claim is they have an obligation to ensure that only real reductions are being used to offset. So this is a system of tracking that they proposed. That's their argument. Look, this is just a methodology. We're not talking about individual offsets. So what's wrong with their tracking method? Well, they are talking about individual offsets. There had to be some real facility, some real source that existed that was really emitting pollution. And what they've done is said, there's a real source that's emitting pollution and it's shut down, and so we're going to take those emissions reductions, we're gonna figure out how much those emissions were, and then we're gonna run them through this validity test, and then the resulting number we're gonna put into this bank. So just because they're banking them, that doesn't mean there wasn't a real source. And so what we're saying is that what we know first is that this rulemaking was initiated in part because there had been EPA concerns about the balances that the district had and where those emissions reductions came from. And when the EPA asked back then for documentation, the district was not able to provide that documentation. So our concern here is what the heightened knowledge about the possibility that emissions reductions are included that are not actually valid, that the EPA, in this case, had a particular obligation to ensure that the district's assertions about its account balance were actually true. And what we know from the Sentinel case, which you'll hear a little bit later, is that it has happened in the past, in the very recent past, that the district made assertions about accounts, about reductions that were valid, the EPA approved those assertions, and then when those assertions were held up to scrutiny, it turned out the assertions were false. So all we're saying is, is EPA has a requirement to ensure that those obligations, that those reductions are real. And in order to do that, as a practical matter, since they are agreeing that a number on a page really represents true emissions reductions, they have to have some information in the record that allows them to make that claim. And in this record, there is no such information. So, Your Honors, if there isn't more questions on that issue, I'd like to make sure that I talk about the baseline argument. So the South Coast and the EPA are claiming that these offsets are... these pre-base-year offsets were incorporated into the SIP through a growth calculation. And that argument is striking because it doesn't comport with the facts in the record. So first, I'd like to be clear about what is in the inventory. And in order to do that, I'm going to use the definitions that the district uses in its brief. And what the district says is that the base year consists of actual emissions. And then future growth, as they define it, is increased emissions that the permitting agency expects will occur. And so the issue here is that you can't take something from nothing. The issue here is that since the base year is the actual emissions that are in the air, and the future growth is the increased emissions, where's the number for the emissions they're going to subtract? That is the number that's not in the inventory, and that's where they run afoul of the Clean Air Act. And it's missing from the inventory because what they should have done, what the regulations and the Clean Air Act requires them to do, is to explicitly add that back into the base year. And they just, as a matter of a fact, did not. And the proof of that is included in the chart that we produced in our brief on page 33, which is an extraction from their SIP, which says how many pre-base year credits are needed, and the answer they gave was zero. So the issue here is that these banked reductions, they're kind of like zombie emissions reductions. It's because they're not in the air, but they have to keep them in the air on paper so they can subtract them later, right? Because the point is that they have to have a subtraction. And here they don't. So the district writes in its brief that in assuming that the new credits are actually added to future emissions, they assumed that they were offset with pre-base year credits. But there's always a problem when one assumes, right? Because you can't just assume that they're in there. You have to take the next additional step. You have to add it to the inventory. And that's where the district's actions fell short of the requirements of the Clean Air Act. And that's the violation that we would like to see corrected. And I see that I am... I only have a minute and a half left that I'd like to reserve for rebuttal unless there are other questions. Thank you. Thank you. Good morning. May it please the Court. Amy Dohner representing the U.S. EPA. Also at council table is Ann Lyons, Region 9 EPA, and Brad Hogan representing the district. I'd like to allow the district an opportunity to respond as well and give them five minutes of the 15 minutes that are allotted for our portion of the argument. We've talked about cooperative federalism before during the arguments today, and I think it's important to look at this very specific supervision that addresses local needs in the L.A. area against that backdrop. EPA's role in the cooperative federalism system under the Clean Air Act is not to be a micromanager or to second-guess the policy decisions that a local air district undertakes, but rather to evaluate whether they comply with the Clean Air Act, and that's what EPA did in this rulemaking. Just to clarify on a factual background information, in this rulemaking, EPA requested that the district submit Rule 13.15 for SIP approval so that there would be greater transparency regarding the tracking system, and that's exactly what happened here. There was no question in terms of asking for the SIP revision that it would be for the... that EPA suspected that there were invalid credits in the tracking system, and the tracking system is, as the judges indicated, it's a set of procedures, and that set of procedures is about checking whether the mechanism of the tracking system is going to fulfill the Clean Air Act offset requirements, and EPA concluded that it did. Now, we recognize that the petitioners are concerned about being able to challenge any particular credit given the fact that there's an aggregate process here, and so I want to address that point specifically. I really see that there are three issues that are bundled up together in this assertion that they need an opportunity to challenge invalid credits that might be in the bank. The first is that they contest that the procedures are not sufficient to validate the credits, the ones that are approved by EPA in the Rule 1315. That issue is before the court here. That'll be addressed in this case, and petitioners will not be able to, in the future, collaterally attack what was approved in this rulemaking. Now, there is the question, I think, of whether the district is appropriately applying those procedures. The procedures are such that the Clean Air Act offset requirements, if they're correctly implemented, would address any of these concerns, but if they were not, there is an avenue for the petitioner, for any concerned citizen to seek review addressed to these specific offset reductions that are being put into the bank, so the crediting portion. The...set forth in Rule 1315 are procedures for an annual addition into the bank. It's called an equivalency determination, and there's a public hearing at the governor's board, and any concerned citizen can participate in that. They can object during that process. It's also possible to go to the South Coast and ask for an audit, and in addition,  or other concerned citizens were concerned that the district, in fact, is not appropriately applying the procedures, either now or if it was simply under the state procedures, they could use California state law. So there's no federal remedy? No. So now that it's been incorporated into the California set, there is a federal remedy as well. In the past, when Rule 1315 was simply a state law mechanism, that remedy was set under state law. I think their complaint is that, look, these are banked in the aggregate. We can't tell what's going on. There's no effective remedy. We don't have a means of tracking these offsets. So what's your response to that? So I want to be clear. I think it's useful to be very specific about the particular concerns that they would have. They can seek review of what is being credited into the bank. So there's an aggregation. So there are two points... And how do they find out that information? They can request that information from the district. That's publicly provided in the equivalency determination. They can also request an audit from the district. And they have the potential, now that Rule 1315 is part of the SIP, to use the Clean Air Act citizen suit provision to also seek enforcement in regards to the appropriate application of Rule 1315, and the procedures that have been approved. So that's in regards to the credits going into the bank. Now, ultimately, this bank is not about what goes into the bank, but rather what comes out of the bank, the debits, right? Because that's about using the offsets for a permit. That's at the point at which these... Up until that point, there's just been reductions in emissions into the air. But there will be eventually an offsetting for these exempted sources and priority reserve sources. And at that point, the petitioners or any other concerned citizen, there's a procedure in the permitting process that allows a person to raise their concerns and then subsequently challenge the permit, and that goes through, you know, the procedures that are set forth. How would they do it? They couldn't just challenge the withdrawal. I mean, if they have doubts about whether or not the deposit into the bank was valid, how do they challenge that? So in specifically addressing the withdrawals for the purposes of a permitting action, right? Right. The, um... Well, so they could potentially... There's nothing there to withdraw because the deposits were invalid. Can they do that? There are... I want to put out two potential hypotheticals just to make this more concrete. First, if, you know, of most concern, at least from EPA's point of view, if the credits... If it... If there was a negative balance in the bank, there could be no permits that would be, um... that could issue and rely on offsets for the bank. Right, but they want to challenge... They want to challenge the credits going in. Right. So in terms of gaining factual information about the credits that are going in and challenging the procedures, they can do so through what I just spoke about. In terms of challenging the permit, the permit, if there's reason to doubt the aggregate balance of the bank, then I... then they can bring up those concerns in the permitting issue. They can bring up any concerns that they want to. I suspect that they would not be successful unless they have actually pointed out to a systematic problem with the use of the bank. So to point out that a... that a facility that was credited into the bank should not have been credited, that's not something that I believed, standing here now, would be successful in challenging a permit down the road. Well, not successful or not allowed. Let's say that they could... I think that they can raise those concerns... No, I know they can raise anything, but, I mean, it's... The question is, let's assume that they've identified a certain credit that everybody agrees is non-valid that goes into the bank, right? Yes. I gather EPA's position is as long as there's a credit balance, it doesn't matter. I would not agree with that. Well, then, how... Okay, how would you approach that? So... In other words, there would be enough credits to cover the withdrawal. So if there was... if there was identified a single credit that had been added to the bank, let's say that that is, you know, 50... That was a credit of 50 tons per year. Mm-hmm. And the sum total of what was in the bank was, let's say, 250,000 pounds per year. I don't think that identifying a specific problem with a credit would be a basis for not issuing the permit that would come from that. Right. I mean, if I'm understanding what you're saying, as long as there are sufficient credits in the bank to support the withdrawal, then they would not be permitted through the permitting process to challenge a specific credit. True? That is correct. The remedy, if they're concerned about specific credits that have been added into the bank, would be to address the crediting of those banks and to... How do they do that? ...to have them removed from the bank. And they can do that either through state law and, you know, asking to compel the district to do so, or they could, at this point, move forward with a Clean Air Act citizen suit to compel enforcement of the Rule 1315 procedures. So the permitting process is just not... You would agree with them that the permitting process is really not a mechanism for enforcing their concerns about particular credits. True? Unless there's a negative balance. Unless there's a negative balance or there's information that indicates that there's the potential of a negative balance. So let's say there's a question about... that there hasn't been... that the number of facilities that shut down to be credited into the bank, in fact, were not actually shut down. And if that was an issue, then I think that that would be a basis for not issuing the permit. But it would have to be on a large scale. Counsel, Judge Gould, earlier you said you were going to leave five minutes for the district as part of cooperative federalism. Thank you very much. I got caught up in my comments. I think that we can rely on our brief in regards to the majority of our comments on the interpretation. But I do want to note that in terms of the reasonable further progress arguments, that it is very important to note that the one-hour ozone standard is subject to backsliding at this point. That it does not... It is not a standard to which there will be redesignation in the future. And the attainment demonstration exists simply as a control measure at this point. But it is not, in fact, an attainment demonstration that is going to lead to a redesignation. And that's an important point, and it underlies EPA's reasoning in regards to the one-hour ozone in this case. Okay, thank you. Good morning, Your Honors. Bradley Hogan for the South Coast Air Quality Management District. I would like to continue the discussion we were just having to make sure that it's clear. The issue that we're talking about is at what point, if any, will petitioners or someone like them have the opportunity to challenge the determination that the district makes that a particular emission reduction or emission reductions meet the integrity requirements that are now set forth in Rule 13.15 and can then be credited into the bank. That particular decision is made during the course of the year. It was not made in connection with Rule 13.15. Rule 13.15 simply involves the procedures by which the district applies the integrity requirements to individual emission reductions. The decision to credit individual emission reductions is something that happens during the course of the year and ultimately culminates in the federal equivalency determination and the equivalency report. And it's at that point that the emission reductions that are proposed for the bank are presented to the District Governing Board and it's at that point at which the district has formally determined that those emission reductions meet the integrity requirements and are therefore creditable into the bank as offsets. That process, as Judge Kaczynski mentioned, that process has been going on for a very long time. The tracking system in one form or another has existed and has been operating since the 1980s at least. I believe maybe into the 1970s a little bit. It was approved as part of the SIP in 1996. However, the integrity requirements and the tracking system itself were not directly codified into the SIP. This is how EPA approved the SIP in Reg 13, the New Source Review Program, in 1996. It said we're approving these rules 1309.1 and 1304 where one can use offsets from the district's internal bank with the understanding that the district will apply a tracking system. And the district had a tracking system and it was written down and it was followed since 1996. The only thing was that the system was not codified into the SIP. Right, so here we are. Let's assume at the end of the year you've issued your annual determinations. Right. They don't agree with them. What's their remedy? Well, the first thing I want to mention is that this issue is not before the court. I don't want to make any admissions that are going to be binding on the district in the future. So I'm going to say I will mention some possibilities but I'm not conceding that these would be viable alternatives. Okay? With that caveat, I'm going to say I can think of two different ways. One would be a citizen suit under Section 304 where the defendant is the district not EPA and the allegation is that they did not properly determine that particular mission reductions as reflected in the annual equivalency reports do not meet the integrity requirements. The NRDC case was mischaracterized earlier by the petitioner's attorney. The NRDC case did not hold that this is the point at which to challenge individual integrity determinations. The NRDC case said that under Bayview Hunters a citizen a citizen suit under Section 304 will only lie to enforce a specific provision of a SIP and because the tracking system had not been codified into the SIP which is what this rule does at that time there were no requirements that could be enforced. Okay? That's what the NRDC court this court held in the NRDC case. So the first way would be to go back to the NRDC court if you will and say okay now it's part of the SIP now we get to enforce it under Section 304. That would be one possibility. There is a case out of the Sixth Circuit the Karelsky case which could be one possibility. Another possibility would be for the petitioners to petition EPA for rulemaking under one of the enforcement provisions set forth in the Clean Air Act such as Section 113 which provides gives EPA the authority to order the district to comply with the provisions of the adopted SIP. Another example might be under Section 179 which provides remedies specifically for non-attainment SIPs and sanctions that apply. So let's say the district has approved offsets that don't meet the integrity requirements. What can a petitioner do? They could try the Section 304 suit and see if EPA  for sanctions of the SIP which now expressly require that internal offsets meet the integrity requirements and if EPA denies that petition then they could bring a lawsuit challenging that denial. And the same can be   non-attainment SIPs. Okay. Thank you. Is my time up then? You're way over time. Oh, already? Thank you. Time really flies when you're standing up here. So I just quickly want to talk to two points. First, it's not correct that they're just approving the scheme and not the offsets and it's not correct that this isn't the time and the place to challenge them. So we agree with their assertions as to going forward challenging new rules. The NRDC court found that when EPA issues a rule that quote not only approved the SIP but also indicated that the credits in the internal accounts were valid that claim has to be brought directly to the balance that appears in the text of the rule. The rule itself has a chart that has numbers that they're claiming are the offset balance. Additionally the district's rule incorporates the offset  into the rule. So what we're saying is we've got to know now that these offsets these emissions reductions are actually valid and there is no way for us to challenge that on the permit level as they conceded and there's no way for us to challenge these offsets the ones that are currently being incorporated in this rule right now later when they do the next year's equivalency determination. Thank you.
judges: Kozinski, Thomas, Gould